CASE 16—PETITION ORDINARY—JANUARY 22.

## Leeman vs. Hinton.

APPEAL FROM M'CRACKEN CIRCUIT COURT.

Duvall.
1du 37
99  227

1du 37
d108 303
108  317

Duvall
1du 37
j112  31
j112  49

1. The constitution of the State declares that "all elections shall be free and equal;" but the authority to decide as to the freedom and equality of elections has not been conferred on the board for trying contested elections. It forms a part of the general jurisdiction of the circuit courts.

2. The statute confers on the board no authority except—1. To determine whether the votes have been correctly summed up; 2. To decide as to the legality of the votes; 3. To decide by lot who is entitled to the office when there is a tie; and 4. To decide whether the candidate receiving the highest number of votes is qualified, and, if not, to order a new election. (*Rev. Stat.*, sec. 8, art. 7, chap. 32.)

3. The board has no power to order a new election, except in the case stated, and no authority in any case to declare an office vacant.

4. The averment of the defendant that "he was elected by the *loyal* voters of McCracken county" is irrelevant, and lays no foundation for proof that he was duly elected.

5. The laws do not define the meaning of the phrase "loyal voters," but, as ordinarily used, its meaning is believed to be quite different from that of the phrases, "legal voters," "qualified voters."

6. County court clerks are not authorized by the constitution, as county judges are, to continue in office until their successors shall be qualified. (16 *B. Mon.*, 542.) But the Legislature, whilst failing to provide for such continuance in office of county clerks elected for a full term, has so provided in the case of persons appointed to fill vacancies. (*Rev. Stat.*, sec. 5, art. 6, chap. 32.)

JNO. M. HARLAN, Attorney General, for appellant, cited *Rev. Stat.*, title *Elections*, pp. 443 to 448; *Civ. Code*, secs. 532, 533; *Con. of Ky.*, sec. 4, art. 8; 13 *B. M.*, 521; 19 *Howard, S. C. R.*, 405; *Debates in Convention*, 587, 602; 1 *Stat. Law*, 671; 1 *Litt.*, 265; *Act of* 1862, *Sess. Acts*, p. 23; 16 *Johns.*, 439.

G. O. YEISER, on same side, cited *Rev. Stat., pp.* 432, 433, 434, 431, 444; 18 *B. Mon., Benit Mil. Law and Ct. Mar., p.* 14.

P. D. YEISER, on same side, cited 13 *B. M.,* 517; 16 *B. M.;* 1 *Met.;* 538.

T. N. LINDSEY, for appellee, cited 1 *Rev. Stat., pp.* 441, 439; *Ky. Con., art.* 2, *sec.* 8; *art.* 6, *sec.* 2; *art.* 8, *sec.* 4; 1 *Rev. Stat., p.* 453; 33*d Art. of War.*

L. D. HUSBANDS on same side.

G. H. MORROW, on same side, cited 13 *B. Mon.,* 517; 16 *B. Mon.,* 547.

JUDGE BULLITT DELIVERED THE OPINION OF THE COURT:

Hinton filed a petition against Leeman, alleging, in substance, that on the 14th day of September, 1863, three persons therein named, composing a legal board for trying a contested election case between James Spence, M. King, and the defendant, Leeman, for the office of county court clerk of McCracken county, decided that said Leeman was not entitled to said office, and that the same was and is vacant; that on the same day, the county court made an order declaring said office vacant, and appointing the plaintiff, Hinton, to fill it; that the plaintiff, after duly qualifying, entered upon the discharge of his duties, but was forcibly ejected therefrom by the defendant, with the aid of the Provost Marshal of Paducah and the military power of the United States; and that the defendant yet has possession of said office, holding it as an usurper; and praying that the plaintiff may be restored thereto, and for all proper relief.

Leeman answered, alleging, in substance, that at said election, he, being constitutionally eligible, was elected by the loyal votes of McCracken county, and that on the 7th September, 1863, he duly qualified by giving bond, &c., and has ever since had charge of the office; admitting the allegations of the petition concerning the decision of the board for trying contested elections, and the orders of the county court; but denying that either said board or said court had authority so to act; and averring that their proceedings were illegal and void, and gave to the plaintiff no right to the office.

The law and facts were submitted to the court, and a judgment rendered for the plaintiff, to reverse which the defendant appeals.

The certificate of the board for trying contested elections, referred to in the petition, is as follows :

" We adjudge that J. K. Leeman is not entitled to the office of county court clerk of McCracken county :

" 1st. Because the election held on the 3d day of August, 1863, was not held in accordance with the laws and constitution of the State of Kentucky.

" 2d. Because the said election, in each of the precincts, was held under the supervision of military officers of the United States army, and under military orders and oaths prescribed by Generals Hurlbut, Asboth, and Colonel Martin.

" 3d. Because a majority of the voters of said county were intimidated and overawed by a squad of armed Federal soldiers at each of the voting places in said county, requiring military oaths of the voters unknown to the constitution and laws of Kentucky.

" 4th. Because said election was held, conducted, and controlled by the military authorities of the United States, and not by the civil officers under the constitution and laws of the State ; and we therefore adjudge that J. K. Leeman received no votes which were legal and constitutional. We therefore declare that the office of county court clerk of McCracken county is vacant. September 14, 1863.

" G. A. FLOURNOY,

" WM. W. HERNDON,

" C. BELL,

" County Board for Contesting Elections."

On the 14th September, 1863, the presiding judge of the county court made the following order :

" It is therefore ordered by the court, in accordance with said judgment of the county contesting board, above recorded, that the office of clerk of the McCracken county court is vacant ; and it is further ordered by the court, that, on to-morrow morning, 10 o'clock, A. M., this court will proceed to fill said office by appointment of a county court clerk."

This was followed by an order appointing Hinton to fill the vacancy until the next regular election.

It is contended by Leeman's counsel, that the board for trying contested elections had no authority, under the circumstances and for the reasons mentioned in their certificate, to declare the office vacant; and such is our opinion.

The constitution of the State declares that "all elections shall be free and equal." (*Art.* 13, *sec.* 7.) But the authority to decide as to the freedom and equality of elections has not been conferred by the Legislature upon the board for trying contested elections, but forms a part of the general jurisdiction of the circuit courts. The statute from which the board derives its authority is as follows:

"Where it shall appear that the candidates receiving the highest number of votes given have received an equal number, the right to the office shall be determined by lot, under the direction of the board. Where the person returned is found not to have been legally qualified to receive the office at the time of his election, a new election shall be ordered. Where another than the person returned shall be found to have received the highest number of legal votes given, such other shall be adjudged to be the person elected and entitled to the office." (*R. S.*, *chap.* 32, *art.* 7, *sec.* 8.)

The board for trying contested elections has no authority except, first, to determine whether or not the votes given have been correctly summed up; secondly, to decide as to the legality of the votes given; thirdly, to decide by lot who is entitled to the office when there is a tie between the candidates receiving the highest number of legal votes given; and fourthly, to decide whether or not the candidate receiving the highest number of legal votes given is qualified to receive the office, and if he is not, to order a new election.

The board, therefore, had no authority even to order a new election, for the reasons stated in their certificate. They, however, did not order a new election, but merely declared the office vacant, which they have no authority to do in any case. It is clear, therefore, that the decision of the board cannot give

validity to the orders of the county court, declaring the office vacant and appointing Hinton to fill the vacancy.

But if the office was vacant for any other reason, the county court had authority to fill it (*R. S., chap.* 32, *art.* 6, *sec.* 5); and the fact that its action was avowedly based upon the un-authorized certificate of the board for trying contested elections, cannot affect the validity of its appointment.

Leeman contends that he was elected on the 3d August, 1863, and that he qualified by giving bond, &c., on the 7th of September, 1863, and consequently that there was no vacancy when Hinton was appointed. But Leeman has failed either to aver or to prove that he was elected, and has failed to prove that he qualified by giving bond, &c.

His only averment concerning his election is, that "he was elected by the loyal votes of McCracken county clerk of the county court, as is evidenced by the certificate of properly constituted examining board herewith filed as part hereof, marked A." The laws of the State do not inform us what is the meaning of the phrase "loyal votes ;" but, as ordinarily used, its meaning is believed to be quite different from that of the phrases "legal voters," "qualified voters."

The constitution declares that "every free white male citizen of the age of twenty-one years, who has resided in the State two years, or in the county, town, or city, in which he offers to vote, one year next preceding the election, shall be a voter." (*Art.* 2, *sec.* 8.) The Revised Statutes declare that the word election, when used in any statute, "shall be deemed to mean an election by the qualified voters" (*chap.* 32, *art.* 1, *sec.* 1); and that the board for trying contested elections shall give the certificate to "the person receiving the highest number of legal votes given." (*Chap.* 32, *art.* 7, *sec.* 8.)

By the act of March 11, 1862, entitled "An act to amend chapter 15 of the Revised Statutes, entitled 'Citizens, Expatriation, and Aliens," the Legislature took, or attempted to take, the right of suffrage from "any citizen of this State who shall enter into the service of the so-called Confederate States, in either a civil or military capacity, or into the service of the so-called Provisional Government of Kentucky, in either a

military or civil capacity, or who, having heretofore entered
such service of either the Confederate States or Provisional
Government, shall continue in such service after this act takes
effect, or who shall take up or continue in arms against the
military forces of the United States or State of Kentucky, or
shall give voluntary aid and assistance to those in arms
against said forces." Whether or not that act is constitutional
we need not, and do not, decide. If it is constitutional, yet it
is clear that a man may be " loyal," according to the ordinary
acceptation of that word, without having a right to vote, and
that a man may have a right to vote without being " loyal."
Leeman's averment, therefore, that he was elected by the
" loyal votes" of McCracken county, is irrelevant, and lays no
foundation for proof that he was duly elected.

But upon this point his proof is as defective as his pleadings.
The clerk has sent us, as part of the record, what purports to
be a copy of the examining board's certificate that Leeman
was duly elected. But it does not appear to have been read
as evidence in the court below. It is not contained, nor re-
ferred to, in the bill of exceptions. Consequently, it cannot
avail the appellant for any purpose in this court. (*Vaughn vs.
Mills*, 18 *B. M.*, 638 ; *Dodd vs. King*, 1 *Met.*, 430 ; *Haney vs.
Tempest*, 3 *Met.*, 95.)

Leeman offered to read as evidence a copy of the evidence
introduced before the board for trying contested elections, in
the contest between him and Spence and King, including
what purport to be copies of his certificate of qualification, of
his official bond, and of the order of the county court approv-
ing the bond, &c. Hinton objected to the evidence ; and as he
was not a party to the proceedings before the board, his objec-
tion should have been sustained. The bill of exceptions fails
to show that any other evidence was introduced conducing to
prove that Leeman had qualified for the office as required by
law.

Leeman, having failed to show that he was elected, that he
received a certificate of election, or that he qualified, by giving
bond, &c., has failed to show that he is entitled to the office.

But Hinton, being the plaintiff, must show that he is entitled

to the office, and cannot recover merely because Leeman is not entitled to it. And the fact, if conceded, that there was no valid election in August, 1863, does not necessarily prove that there was a vacancy at the time of Hinton's appointment.

The constitution declares that judges of the county courts shall be elected " for the term of four years, and shall continue in office until their successors be duly qualified " (*art. 4, sec. 30*) ; and that a county court clerk shall be elected for each county, " whose term of office shall be the same as that of the presiding judge of the county court." (*Art. 6, sec. 1.*) The constitution does not declare that county court clerks shall continue in office until the qualification of their successors. It merely declares that their term of office shall be the same as that of county judges. It has been decided that the continuance in office of county judges, after the expiration of four years and until the qualification of their successors, forms no part of their term ; and that county court clerks are not authorized by the constitution to continue in office until their successors shall be qualified. (*Stevens vs. Wyatt & Co.*, 16, *B. M.*, 542.) Nor has the Legislature authorized county court clerks, elected for a full term, to continue in office until the qualification of their successors. Consequently, if August, 1863, had been the time for the general election of county court clerks, and if there was no valid election in McCracken county, there might have been reason to presume that there was a vacancy at the time of Hinton's appointment.

But August, 1862, was the time for the general election of county court clerks. The fact that an election of county court clerk was held, or attempted to be held, in McCracken county, in August, 1863, authorizes the assumption that there was no election for that office in August, 1862, or that the successful candidate failed to qualify, or that, having qualified, he vacated the office ; and that the county court performed its duty by filling the vacancy. If so, its appointee was entitled to the office until the election and qualification of a successor, and the county court had no authority to eject him by declaring the office vacant and appointing Hinton to fill it ; because the Legislature, whilst failing to provide for the continuance in

office of county court clerks elected for a full term, until their successors shall be qualified, has provided for such continuance in office of persons appointed to fill vacancies. (*R. S., chap.* 32, *art.* 6, *sec.* 5.)

If the vacancy was not filled before Hinton was appointed, or if the person previously appointed to fill it had vacated the office, Hinton should have shown the fact.

As Hinton has not alleged that the election was controlled by military force, and as he has not shown that he is entitled to the office even if the election was illegal and void, we need not express an opinon upon the questions discussed by counsel concerning its validity. Judge Williams dissents from some portions of this opinion ; what portions are shown by his dissenting opinion.

The judgment is reversed and the cause remanded, with directions to dismiss the petition unless it shall, within a reasonable time, be so amended as to show that Hinton is entitled to the office.

---

JUDGE WILLIAMS, dissenting from the decision of the majority of the court, delivered the following opinion :

It is not necessary to resort to the poll-books of the election of August, 1863, incorporated as part of the evidence as certified by the circuit judge, nor to Leeman's certificate of election, signed by the county judge and sheriff, and made an exhibit in his answer, but not read as evidence, to show that Leeman was the actual incumbent, regularly installed into the office of county court clerk of McCracken county, when the order of the county court was made declaring the said office vacant, predicated on the judgment of the contesting board; also, the order appointing Hinton to fill said vacancy.

At page 46, record, and as part of the bill of exceptions, signed by the circuit judge, is this statement : " also, the defendant desired to have regarded as read all the proceedings and the evidence in the case of *Spence and King vs. J. K. Leeman* contesting his right to the office, B. J. Hinton objecting to its competency; but it was agreed the same might be considered as read so far, and only so far, as the same is compe-

tent and relevant. And as a part of the proceedings and evidence before the contesting board, this statement is found at page 61, record, to-wit: " Leeman then offered the following minute book of county court as to Leeman's qualifications as county court clerk, bond, &c. (page 8; the bond does not appear in the minutes or on file), a copy furnished. See page 641." Now, take all in the brackets as the statement of the clerk, which doubtless it is, and for the minutes reference is made to page 8, with the statement that bond was not on file, &c.

By turning to page 8 of the record, this statement and order is found: " The order of court marked B, mentioned in the answer, reads as follows : ' Monday, September the 7th, 1863, called court.

' J. K. Leeman produced his certificate of election to the office of county court clerk of McCracken county, Kentucky, and also a certificate of qualification from Hon. C. S. Marshall, judge of the first judicial district, and offered for his securities R. H. Hall, D. C. Peters, and Wm. H. Kidd, and moved to qualify as county court clerk. Thereupon Milton King and James Spence, by their counsel, moved the court to postpone any further action in this court as to the qualification of said Leeman until the board for contested elections for this county should act upon the two cases of *King and Spence vs. Leeman* for the office of county clerk. The said Leeman asked further time to obtain other sureties on his bond, which was granted him. The said Leeman then presented the names of Albert Bradshaw and R. A. Bacon as additional securities, who, together with the first named securities, were accepted as sufficient by the court. Upon consideration, the court overruled the motion of King and Spence, the two contestants, to which King and Spence excepted, and thereupon said Leeman executed a covenant to the Commonwealth of Kentucky, with R. H. Hall, D. C. Peters, W. H. Kidd, Albert Bradshaw, and R. A. Bacon as his securities, in open court, and took the oaths as required by the constitution and laws of this State.

' A true copy—attest:

' J. K. LEEMAN, *Clerk.*' "

When a record or written instrument has been used as evidence in a case, and a copy is elsewhere to be found in the record, to refer to it by the clerk has been repeatedly held by this court as incorporating it into the bill of exceptions, and is both proper and convenient as not encumbering the record with unnecessary copies.

As much of this proceeding before the contesting board had been used by Hinton as evidence, and as it is incorporated as part of the evidence before the circuit court, certainly under said agreement, at least, all that portion which was competent and relevant should be considered by this court. As there was no exception taken to its being read, although objected to, it might well be said it could not be excluded by this court. It has been repeatedly held by this court, before they will revise an error of the circuit court in admitting evidence, that the record must show not only that it was objected to, but *that an exception* to the ruling of the court had been taken. *Objection* without *exception,* or *vice versa,* has been universally held as insufficient. This county court order was part of the evidence presented to the circuit court, is incorporated in the bill of exceptions; is both competent and relevant; it cannot be excluded by this court, whether tested by the principles of law or the terms of the agreement; it should therefore be regarded by this court.

The parol testimony of G. A. Flournoy, called by Hinton, to which there is neither objection nor exception, also establishes that Leeman was the *incumbent* in said office. He stated: "That at the called term of his court at which B. J. Hinton was appointed county court clerk, defendant Leeman refused to enter up the orders of court then and there made; and upon his refusal, he, witness, as county judge, recorded in the order book of the court his own orders appointing Hinton clerk, to-wit: 'The above order (the appointment of B. J. Hinton) was made by the judge of this court, J. K. Leeman, the *incumbent,* refusing to do so, and voluntarily absenting himself.'"

This evidence being introduced by Hinton without objection, is both competent and sufficient to establish that Leeman was

then the *incumbent* in the office of county court clerk. Hinton cannot be heard to object to it, as it is his own evidence. It is thus established that Leeman was the incumbent, acting as the county court·clerk; that he had been regularly installed into office; had executed the necessary bond, and taken the requisite oaths of office ; that he had the necessary certificate from the circuit judge of his qualifications to discharge the duties of the office. The county court order also recites that he had a certificate of election; but whether this installation into office be by virtue of an election or appointment to fill a vacancy by the county court, matters not.

The county court being of limited jurisdiction, the facts authorizing it to take jurisdiction must appear, and no presumption in favor of its jurisdiction can be indulged.

Its jurisdiction is attempted to be sustained by the judgment of the contesting board; its action was predicated thereon, as shown by the recitals of its orders declaring a vacancy and appointing Hinton to fill the vacancy. But as there was an incumbent, before the county court can declare a vacancy, some cause known to the law, and recognized by it, must appear in the county court proceedings. The county court cannot at its mere will and pleasure declare a vacancy and proceed to fill it. This court having unanimously agreed that the judgment of the contesting board was illegal and of no effect, it conferred no right on the county court to declare a vacancy.

There are a few specified instances where the law declares a vacancy, on a given state of facts, and authorizes the county court to ascertain those facts, and then, by entering them on the record, to pronounce the judgment of vacancy as declared by the statute.

Such is the case under *sec.* 5, *chap.* 91, 2 *vol. Stant. Rev. Stat.,* 340, and as recognized in *Stokes vs. Kirkpatric,* 1 *Met.,* 144.

But no instance, I apprehend, can be found where the county court can declare a vacancy in the office of clerk without assigning the causes, if, indeed, the court can in any state of case declare such vacancy where there is an incumbent.

The facts showing that there was an incumbent, and no

vacancy, the order declaring a vacancy and appointing Hinton to it is absolutely null and void, and confers upon him no right or title whatever to the office.

If Leeman holds the office illegally and as an usurper, he is liable to an indictment. See *sec. 1, art.* 23, 1 *vol. Stant. Rev. Stat., p.* 407, *and Commonwealth vs. Adams,* 3 *Met.,* 7, or by *sec.* 532, *Civil Code;* "whenever a person usurps an office or franchise to which he is not entitled by law, an action by ordinary proceedings may be instituted against him, either by the Commonwealth or the *party entitled to the office or franchise, to prevent the usurper exercising the office or franchise.*"

This was intended by Hinton as a suit under said section; but to maintain this action in his name, it is essential for him to show his right to the office. He predicates his right entirely on the action of said contesting board, and the orders of the county court founded thereon; none of which confers on him any right whatever to the office.

It may be proper on a direct proceeding in the name of the Commonwealth, or on an indictment for usurping the office, to inquire into the legality of Leeman's election; but a mere stranger, without any legal right to the office, cannot in his own name have the legality of the election inquired into; and Hinton's suit should be dismissed absolutely.

I dissent from the opinion of the majority, so far as their opinion conflicts with these views.